UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE MORGAN, et al., | ) |
| | ) |
| Plaintiff(s), | ) No. C08-5211 BZ |
| | ) |
| v. | ) |
| | ) **ORDER ON DEFENDANTS' MOTION** |
| HARMONIX MUSIC SYSTEMS, | ) **TO DISMISS FIRST AMENDED** |
| INC., et al., | ) **COMPLAINT AND MOTION TO** |
| | ) **STRIKE** |
| Defendant(s). | ) |

Defendants Harmonix Music Systems, Inc., MTV Networks, and Electronic Arts, Inc. (collectively "defendants") move to dismiss plaintiffs' first amended consumer class action complaint ("complaint'), which alleges violations of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"); Cal. Bus. & Prof. Code §§ 17200 *et seq.;* ("UCL") as well as violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq*.

///

///

///

1

("Song-Beverly Act").[1]  Plaintiffs purchased defendants' Rock Band video game and drum pedal hardware and allege that the drum pedal was defective and broke within months of purchase. For the reasons set forth below, defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) is **DENIED IN PART AND GRANTED IN PART**.[2]

Defendants challenge plaintiffs' first claim, for breach of the implied warranty of merchantability, contending that the implied warranty on the drum pedal is coextensive with the express 60 day warranty and expired before plaintiffs' drum pedals broke.

The implied warranty of merchantability arises by operation of law.  Hauter v. Zogarts, 14 Cal. 3d 104, 117

---

[1]  On January 1, 1965, the Uniform Commercial Code took effect in California. (Cal. U. Com. Code, § 1101 et seq.; see also Stats. 1963, ch. 819, and 23A West's Ann. Cal. U. Com. Code, p. 1.) Division 2 of that code, also known as "Uniform Commercial Code -- Sales," applies to "transactions in goods." Cal. U. Com. Code, § 2101, 2102.  The provision describing the implied warranty of merchantability appears at section 2314. Although the Uniform Commercial Code provides a similar warranty of merchantability, its provisions proved "limited in providing effective recourse to a consumer dissatisfied with a purchase."  Krieger v. Nick Alexander Imports, Inc., 234 Cal. App. 3d 205, 213 (1991). In order to provide greater protections and remedies for consumers, the Legislature enacted the Song-Beverly Act.  Robertson v. Fleetwood Travel Trailers of California, Inc., 144 Cal. App. 4th 785, 801 (2006).  It "is strongly pro-consumer" and "makes clear its pro-consumer remedies are in addition to those available to a consumer pursuant to the [Uniform] Commercial Code . . . ."  Murillo v. Fleetwood Enterprises, Inc., 17 Cal. 4th 985, 990(1998) To "the extent that the [Song-Beverly] Act gives rights to the buyers of consumer goods, it prevails over conflicting provisions of the Uniform Commercial Code."  4 Witkin, Summary of Cal. Law (10th ed. 2005) Sales, § 52, p.63 (citing Civ. Code, § 1790.3).

[2]  All parties have consented to my jurisdiction, including entry of final judgment, pursuant to 28 U.S.C. § 636(c) for all proceedings.

1  (1975).  It does not "impose a general requirement that goods
2  precisely fulfill the expectation of the buyer. Instead, it
3  provides for a minimum level of quality."  Burr v. Sherwin
4  Williams Co., 42 Cal. 2d 682, 694 (1954); Moore v. Hubbard &
5  Johnson Lumber Co., 149 Cal. App. 2d 236, 240-241 (1957).
6  Under the Song-Beverly Act, the duration of the implied
7  warranty of merchantability is the same as the duration of
8  any reasonable express warranty that accompanies the product,
9  but in no event shorter than 60 days or longer than one year.
10  See Cal. Civ. Code, § 1791.1, subd. (c).

11  The Court is not prepared to rule as a matter of law
12  that 60 days is a reasonable duration of the implied warranty
13  of merchantability for the drum pedal.  Defendants have cited
14  no authority, and the Court has found none, which requires
15  such a ruling.  Under the Commercial Code, the reasonableness
16  of any time period depends on the facts and circumstances
17  surrounding its invocation.  See Cal. U. Com. Code § 1205
18  (2008) ("Whether a time for taking an action required by this
19  code is reasonable depends on the nature, purpose, and
20  circumstances of the action.).  For products which are likely
21  to be used shortly after purchase and, if defective, fail
22  immediately, sixty days may be a reasonable warranty period.
23  But there are also products which are less likely to be used
24  directly upon purchase or whose defect may not show up for
25  some time.

26  Here, the drum pedal accompanies a video game and,
27  plaintiffs allege, is often bought as a gift, meaning that it
28  may not be used until well after its purchase.  In addition,

3

1  the defect is latent and may not be apparent on early use.
2  Furthermore, plaintiffs allege that defendants acknowledged
3  the unreasonableness of the 60 day period by advising the
4  public that until October 1, 2008, it would replace a damaged
5  drum pedal even after the 60 day period had expired.  Under
6  these circumstances, plaintiffs have sufficiently alleged a
7  claim for breach of the implied warranty of merchantability.
8       On July 2, 2009, the Court *sua sponte* raised the issue
9  of vertical privity.  Defendants now argue that the complaint
10 fails to allege facts establishing contractual vertical
11 privity between plaintiffs and defendants.  Under California
12 law, "a plaintiff asserting breach of warranty claims must
13 stand in vertical contractual privity with the defendant."
14 Clemens v. Daimlerchrysler Corporation, 534 F.3d 1017, 1023
15 (9th Cir. 2008).  The vertical privity requirement exists
16 under both the Song-Beverly Act and the California Commercial
17 Code.  Here, the complaint neither identifies where nor from
18 whom plaintiffs purchased Rock Band.  Having failed to allege
19 facts to establish that they stand in vertical privity with
20 any defendant, plaintiffs breach of  implied warranty of
21 merchantability claim is **DISMISSED** with leave to amend.
22      Defendants next attack plaintiffs' CLRA claims.  As a
23 threshold matter, defendants argue that plaintiff Monte
24 Morgan ("Morgan") lacks standing to sue under the CLRA
25 because he is a resident of Kansas and did not purchase
26 ///
27 ///
28 ///

4

1  Rock Band in California.[3]

2  California courts have extended state-created remedies to out-of-state parties harmed by wrongful conduct only when that conduct occurs in California.  *See, e.g.*, <u>Diamond Multimedia Systems, Inc. v. Superior Court</u>, 19 Cal. 4th 1036 (1999); <u>Norwest Mortgage, Inc. v. Superior Ct.</u>, 72 Cal. App. 4th 214, 224-25 (1999) ("State statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California.").  Here, plaintiffs' complaint alleges only that defendant Electronic Arts, Inc., the distributor of Rock Band, is headquartered in California.  There are no allegations connecting the other defendants to California.  The complaint fails to allege what conduct of the defendants, if any, that violated the CLRA took place in California or how Morgan was injured in California. *See* <u>In re Mattel, Inc.</u>, 588 F. Supp. 2d 1111 (N.D. Cal. 2008) (complaint alleged, *inter alia*, that reports, company statements, and advertisements containing misrepresentations were approved by Mattel in California).  I therefore conclude that plaintiffs have failed to allege sufficient facts to establish that Morgan has standing to sue under the CLRA and **GRANT** the motion to dismiss with leave to amend.[4]

---

[3] Whether absent class members have standing to sue under California Consumer Protection Laws is better addressed in connection with class certification.

[4] Defendants make the same standing argument with regard to plaintiffs UCL claims, discussed *infra*.  For the same reasons that plaintiffs have failed to allege sufficient facts to establish that Morgan has standing to sue under the CLRA,

5

1        Defendants argue that the CLRA claims should be
2   dismissed because the complaint "fails to identify a single
3   representation or advertisement by [d]efendants that falsely
4   represents the characteristics, standard, or quality of the
5   *Rock Band* drum pedal." (D's Mot. to Dismiss p.16.)
6   Plaintiffs allege that defendants, in their representations
7   and omissions, violated: 1) Cal. Civ. Code § 1770(a)(5) by
8   representing that the Rock Band drum kits have approval,
9   characteristics, uses and benefits that they do not have; 2)
10  Cal. Civ. Code § 1770(a)(7) by representing that the Rock
11  Band drum kits were of a particular standard or quality when
12  they were not; and 3) Cal. Civ. Code § 1770(a)(9) when they
13  advertised and marketed Rock Band drum kits with the intent
14  not to sell them as advertised. More specifically,
15  plaintiffs allege that defendants violated the CLRA by
16  failing to disclose to the public that the Rock Band drum
17  pedals were defective and would readily break under ordinary
18  and expected usage, and by continuing to advertise, market,
19  and sell defective drum pedals notwithstanding knowledge of
20  the defect.
21       The CLRA proscribes both active misrepresentations about
22  the standard, quality, or grade of goods, as well as active
23  concealment related to the characteristics or quality of
24  goods that are contrary to what has been represented about

---

plaintiffs have also failed to allege sufficient facts to establish that Morgan has standing to sue under the UCL. *See* Norwest Mortgage, Inc., 72 Cal. App. at 224-25 (1999) (prohibiting non-California residents from asserting a UCL claim based on conduct occurring outside of California's borders).

6

1  the goods.  Outboard Marine Corp. v. Superior Court, 52 Cal.
2  App. 3d 30, 36 (1972).  As stated in Outboard Marine, in the
3  CLRA context, "[f]raud or deceit may consist of the
4  suppression of a fact by one who is bound to disclose it or
5  who gives information of other facts which are likely to
6  mislead for want of communication of that fact."  Id. at 37;
7  see also Daugherty v. American Honda Motor Co., Inc., 144
8  Cal. App. 4th 824, 833-36 (2006) ("although a claim may be
9  stated under the CLRA in terms constituting fraudulent
10 omissions, to be actionable the omission must be contrary to
11 a representation actually made by the defendant, or an
12 omission of a fact the defendant was obliged to disclose.").

13     I find that the complaint does not plead sufficient
14 facts to state a claim under the CLRA for affirmative
15 misrepresentation or concealment.  The complaint fails to
16 identify any affirmative representation by defendant that the
17 drum pedals had a characteristic that they do not have, or
18 are of a standard or quality of which they are not.  See Cal.
19 Civ. Code, § 1770, subd. (a)(5) & (7).  Plaintiffs argue that
20 the complaint "includes numerous allegations of affirmative
21 representations"; yet the allegations to which plaintiffs
22 direct my attention merely state that plaintiffs weren't able
23 to play the game "as advertised."

24     Essentially, plaintiffs contend that any statement made
25 by defendants that the Rock Band game could be played with
26 drums was false because for certain customers, the pedal
27 eventually failed.  But California courts require more than
28 "vague statements" about a product to form the basis of an

7

1  actionable CLRA misrepresentation claim.  *See, e.g.*, Long v.
2  Hewlett-Packard Co., No. 06-02816, 2007 U.S. Dist. LEXIS
3  79262, 2007 WL 2994812, at *20-21 (N.D. Cal. July 27, 2007)
4  ("The word 'notebook' describes the type of product being
5  sold; it does not constitute a representation regarding the
6  quality of the computer's parts, nor a representation
7  regarding the consistency or longevity of the computer's
8  operation."); *see also* Consumer Advocates v. Echostar
9  Satellite Corp., 113 Cal. App. 4th 1351 (2003) (statements of
10 "crystal clear digital video" and "CD-quality audio" were
11 non-actionable, while representations that customers would
12 receive "50 channels" and a "7-day schedule" were actionable
13 misrepresentations).  The cases upon which plaintiffs rely
14 involve situations where a specific representation was made
15 about a product that proved false.  For example, in Paduano
16 v. America Honda Motor Co., 169 Cal. App. 4th 1453 (2009),
17 the court held that "just drive the Hybrid like you would a
18 conventional car, while saving on fuel bills" could be a
19 misrepresentation because the Hybrid could not save on fuel
20 bills if driven exactly like a conventional car.  The
21 representation was specific to what would happen if the
22 Hybrid was driven a certain way.  Here, plaintiffs have
23 alleged no specific representations about the durability of
24 the foot pedal.
25     Nor does the complaint allege facts showing that
26 defendants were "bound to disclose" any defect in the drum
27 pedal, particularly in light of the fact that both
28 plaintiffs' drum pedals, according to the complaint, lasted

the duration of the express warranty.[5]  *See* Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 969-70 (2008) (reviewing case law pertaining to when there is a duty to disclose).  According to all relevant case law, defendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use.  *See, e.g.*, Daugherty, 144 Cal. App. 4th at 835-36; Bardin v. DaimlerChrysler Corp., 136 Cal. App. 4th 1255 (2006); Long v. Hewlett-Packard Co., No. 06-02816, 2007 U.S. Dist. LEXIS 79262, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007).

Accordingly, plaintiffs' claim for violation of the CLRA fails because the complaint neither alleges facts showing defendants were "bound to disclose" any known defects related to the Rock Band drum pedal, nor alleges a single affirmative representation by defendants regarding the drum pedals.  Plaintiffs' CLRA claim is **DISMISSED** with leave to amend.

Finally, defendants argue that plaintiffs fail to state a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.  The UCL prohibits acts or practices which are (1) fraudulent, (2) unlawful, or (3) unfair.  Cal. Bus. & Prof. Code § 17200.  Plaintiffs argue

---

[5] The complaint alleges that plaintiff Morgan purchased his drum kit on July 6, 2008 and that his pedal broke on October 18, 2008, more than one month after the sixty day warranty expired.  The complaint alleges that plaintiff Vasquez purchased his drum kit "on or about" December 15, 2007 and that his pedal broke "in February 2008."  It is unclear whether Vasquez's pedal broke before or after the sixty day warranty elapsed and why it was not replaced under the extended warranty period provided by defendants throughout most of 2008.

9

that the complaint states a claim for unfair competition by alleging that the defendants intentionally concealed a known defect with the Rock Band drum pedals for the specific purpose of "deliberately cheating large numbers of consumers out of individually small sums of money" by forcing consumers to either buy the new version of Rock Band or a replacement part. (Compl. ¶¶ 31, 67). They argue that defendants' actions violated all three prongs of the UCL.

By proscribing unlawful business practices, the UCL borrows violations of other laws and treats them as independently actionable. Practices may be deemed unfair or fraudulent, however, even if not proscribed by some other law. Farmers Ins. Exchange v. Superior Court, 2 Cal. 4th 377, 383 (1992); *see also* Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180 (1999).

"[A]n action based on . . . [S]ection 17200 to redress an unlawful business practice borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable." Farmers Ins. Exchange, 2 Cal. 4th at 383 (citations and internal quotations omitted). I have concluded that plaintiffs have not stated a CLRA claim, and plaintiffs have not identified any other law which they claim defendants violated, the CLRA cannot serve to support a claim under the "unlawful" prong of Section 17200.

With regard to the unfairness prong of the UCL, I find that plaintiffs have failed to allege that defendants'

10

1  actions were unfair, as that term is used under the UCL.
2  Historically, in order to determine whether conduct is unfair
3  under the UCL, California courts applied a balancing test.
4  Under that test, "the determination of whether a particular
5  business practice is unfair necessarily involves an
6  examination of its impact on its alleged victim, balanced
7  against the reasons, justifications and motives of the
8  alleged wrongdoer. In brief, the court . . . weigh[s] the
9  utility of the defendant's conduct against the gravity of the
10 harm to the alleged victims."  Motors, Inc. v. Times Mirror
11 Co., 102 Cal. App. 3d 735, 740 (1980); see also People v.
12 Casa Blanca Convalescent Homes Inc., 159 Cal. App. 3d 509
13 (1984) (stating that a practice in California is unfair "when
14 it offends an established public policy or when the practice
15 is immoral, unethical, oppressive, unscrupulous or
16 substantially injurious to consumers.").  However, in
17 Cel-Tech Communications, Inc. v. Los Angeles Cellular
18 Telephone Co., 20 Cal. 4th 163 (1999), the Supreme Court of
19 California rejected this test and held that in the context of
20 an unfair competition claim brought by a competitor, "any
21 finding of unfairness . . . [must] be tethered to some
22 legislatively declared policy."  Id. at 185.  While the
23 Cel-Tech court expressly limited its holding to competitor
24 lawsuits, the appropriate test to determine whether a
25 practice is "unfair" in a consumer case under California law

1  is uncertain.[6]  *See* Lozano v. AT&T Wireless Services, Inc.,
2  504 F.3d 718, 735 (9th Cir. 2007) (stating "California's
3  unfair competition law, as it applies to consumer suits, is
4  currently in flux."); *see also* Spiegler v. Home Depot U.S.A.,
5  552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008).

6      I conclude that under either test, plaintiffs' complaint
7  does not sufficiently allege that defendants engaged in
8  unfair practices.  First, plaintiffs have not alleged facts
9  sufficient to show that defendants' conduct violates a
10 "legislatively declared policy."  Second, under the balancing
11 test, plaintiffs have failed to state a claim, as they do not
12 allege that defendants made any specific representations
13 about the composition of the drum pedals relative to their
14 use; that plaintiffs suffered any substantial injury due to
15 the alleged defect in the drum pedals other than the cost for
16 the repair or replacement of the drum pedals; or that
17 defendants' actions violated any public policy.  *See* Bardin,
18 136 Cal. App. 4th at 1270 (allegation that manufacturer used
19 less expensive and less durable steel, rather than cast iron,
20 in exhaust manifold to make more money does not state a

---

[6] Following the California Supreme Court's decision in Cel-Tech, appellate court opinions have been divided over whether the definition of "unfair" under the UCL as stated in Cel-Tech should apply to UCL actions brought by consumers. *See* Paulus v. Bob Lynch Ford, Inc., 139 Cal. App. 4th 659 (2006) (noting split of authority). Compare, for example, Smith v. State Farm Mutual Automobile Ins. Co. (2001) 93 Cal. App. 4th 700, 720 n.23 (2001) ("we are not to read Cel-Tech as suggesting that such a restrictive definition of 'unfair' should be applied in the case of an alleged consumer injury") with Scripps Clinic v. Superior Court, 108 Cal. App. 4th 917, 940 (2003) (requiring, under Cel-Tech, that a UCL claim be tethered to a legislatively declared policy).

12

violation of public policy and was not immoral or unethical); *see also* Spiegler, 552 F. Supp. 2d at 1045-46.  Accordingly, plaintiffs have not alleged sufficient facts to establish a violation of the "unfairness" prong of the UCL.

Finally, the conduct alleged does not constitute a fraudulent business act or practice.  Unlike common law fraud, a UCL violation can be shown even without allegations of actual deception, reasonable reliance, and damage.  Historically, the term "fraudulent," as used in the UCL, has required only a showing that members of the public are likely to be deceived.  Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal.3d 197, 211 (1983) *superceded on other grounds as explained in* Californians for Disability Rights v. Mervyn's, LLC, 39 Cal. 4th 223, 228 (2006); *see also* Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000).  Plaintiffs contend that defendants' failure to disclose the defect in the drum pedal, and their continued efforts to market and advertise the Rock Band game as one in which an individual could play the part of a drummer, were deceptive practices that were "likely to deceive members of the consuming public."  (Compl. ¶¶ 71-74.)  Fairly read, the complaint's focus is on defendants' alleged failure to disclose their alleged knowledge that the drum pedals would fail to work properly after only slight use.  However, as previously stated, "[a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL."  Berryman v. Merit Property Management, Inc., 152 Cal. App. 4th 1544, 1557 (2007) (failure to disclose

13

detailed listings or breakdowns of specific escrow charges comprising transfer or document fees did not violate the UCL). This is because a consumer is not "likely to be deceived" by the omission of a fact that was not required to be disclosed in the first place.[7]

"In order to be deceived, members of the public must have had an expectation or an assumption about" the product at issue. Bardin, 136 Cal. App. 4th at 1275. Here, the complaint fails to allege facts showing that defendants made any representation regarding the durability of the drum pedals. Accordingly, the only expectation buyers could have had about the drum pedals was that they would function properly for the length of the express warranty, which according to the allegations of the complaint, was about how long the pedals lasted. See Daugherty, 144 Cal. App. 4th at 838. Plaintiffs' allegations are therefore insufficient to sustain a fraud-based claim under the UCL. Plaintiffs' claims for violations of the UCL are **DISMISSED** with leave to amend.[8]

---

[7] Plaintiffs' reliance on Falk v. General Motors, 496 F. Supp. 2d 1088 (N.D.Cal. 2007)(manufacturer owed a duty to disclose a known safety defect) and Baggette v. Hewlett-Packard Co., 582 F.Supp. 2d 1261 (C.D. Cal. 2007)(specific representation that ink cartridge was empty when it was not was actionable) is misplaced. Here, there are no allegations that the allegedly defective foot pedal created a safety problem or that defendants made any representation about the durability of the pedal. Furthermore, at least one state court has declined to read Falk as recognizing a duty to disclose outside the safety area. Buller v. Sutter Health, 160 Cal. App. 4th, 981, 988 (2008).

[8] Defendants' motion to strike is **DENIED** without prejudice. Issues related to plaintiffs' proposed class definition are better resolved as part of the class

Plaintiffs' amended complaint shall be filed by **July 20, 2009**. In view of the referral to Judge Spero for a settlement conference, defendants need not respond to the amended complaint until 15 days after the conclusion of the settlement conference. The current class certification schedule is **VACATED**. If the case does not settle, the parties shall stipulate to a new schedule or contact the Court for a status conference.

Dated: July 7, 2009

Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\MORGAN v. HARMONIX\ORDER ON D'S MOT TO DISMISS.BZ FINAL 2.wpd

---

certification process.

15